IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) **KATELYNNE MCCLURE**, AND ON BEHALF OF; <br> (2) **B.C.M.E.**, A MINOR CHILD, <br><br> **PLAINTIFFS**, <br><br> VS. <br><br> (1) **DOUG SPENCER,** Individually as Captain of the Police Department of City of Catoosa, Oklahoma; <br> (2) **JENNIFER SWARER**, Individually as Sergeant of the Police Department of City of Catoosa, Oklahoma; AND <br> (3) **DOUG WALLS**, Individually as an Officer of the Police Department of City of Catoosa, Oklahoma; <br><br> **DEFENDANTS.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **CASE NO.** <br> ) <br> ) <br> ) <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) **ATTORNEY'S LIEN CLAIMED** <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT**

Plaintiffs, Katelynne McClure and B.C.M.E., through their attorneys of record, Isaiah Parsons, Charles Graham, and Matthew Day of Parsons, Graham & Day, LLC, and Lawrence W. Zeringue of Lawrence W. Zeringue, P.C., for their, *Complaint* state and allege:

## JURISDICTION AND VENUE

1. This action is brought under 42 U.S.C. § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution. This Court has federal question jurisdiction under 28 U.S.C. § 1331.

2. The actions giving rise to the Plaintiffs' claims occurred in the City of Catoosa, Rogers County, State of Oklahoma, which is within the confines of the United States District Court for the Northern District of Oklahoma. Venue is proper in the Northern District under 28 U.S.C. § 1391(b)(1).

## PARTIES

3. At all relevant times, Plaintiffs Katelynne McClure and B.C.M.E. were residents of Rogers County and citizens of the State of Oklahoma.

4. Defendant Doug Spencer ("Captain Spencer") is an individual who, at all relevant times, was a Captain in the Catoosa Police Department and is a citizen of the State of Oklahoma.

5. Defendant Jennifer Swarer ("Sergeant Swarer") was an individual who, at all relevant times, was a Sergeant in the Catoosa Police Department and was a citizen of the State of Oklahoma.

6. Defendant Doug Walls ("Officer Walls") is an individual who, at the relevant time, was an Officer in the Catoosa Police Department and is a citizen of the State of Oklahoma.

7. The Defendants allegedly performed their conduct under color of law, within the meaning of 42 U.S.C. § 1983.

## FACTS

8.     Plaintiff Katelynne McClure ("Katelynne") is the unwed mother and sole legal custodian of Plaintiff B.C.M.E. ("B.C.M.E.") (collectively "the McClures"). Oklahoma law holds that "[e]xcept as otherwise provided by law, the mother [Katelynne] of a child born out of wedlock has custody of the child [B.C.M.E.] until determined otherwise by a court of competent jurisdiction." 10 O.S. § 7800.

9.     Because no court of competent jurisdiction has ruled otherwise, Katelynne, the unwed mother of B.C.M.E., is the only person who has and has had legal custody and care of B.C.M.E.

10.    B.C.M.E. is Katelynne McClure's minor child.

11.    Timothy Elam ("Elam") is an alleged father of B.C.M.E. Elam has never had physical custody, nor has Elam ever had legal custody rights to B.C.M.E.

12.    Katelynne contracted with Greenbrier Learning Center, II, LTD. ("Greenbrier") to provide daycare services for B.C.M.E. in Catoosa, Oklahoma.

13.    As required by Greenbrier's policies, Katelynne gave Greenbrier a written list of the only people Katelynne authorized to remove B.C.M.E. from Greenbrier's care and custody.

14.    Elam is not and never was on the list given to Greenbrier by Katelynne of individuals authorized to remove B.C.M.E. from Greenbrier's custody and care.

15.    Upon information and belief, Elam learned from Sergeant Swarer where B.C.M.E. attended daycare.

16. Sergeant Swarer had been in a relationship with and was the former significant other of the man who was Katelynne's significant other at the time of the actions, giving rise to the claims in this Complaint.

17. On February 21, 2022, Elam was a resident and citizen of Kentucky.

18. On February 21, 2022, President's Day, Elam presented himself at Greenbrier with his cousin, Jessica Satterley ("Satterley"), and demanded Greenbrier, through its agents Shawna Stephens ("Stephens") and Carmella Prather ("Prather"), release B.C.M.E. to him.

19. On February 21, 2022, Elam did not have a court order establishing himself as a legal custodian of B.C.M.E., nor has he had such an order before or after February 21, 2022.

20. On February 21, 2022, Captain Spencer, Sergeant Swarer, and Officer Walls were police officers with the Catoosa Police Department.

21. On February 21, 2022, Captain Spencer, Sergeant Swarer, and Officer Walls arrived at Greenbrier, and the Greenbrier staff told them that Elam was there to take physical custody of B.C.M.E. and remove him from Greenbrier.

22. Captain Spencer, Sergeant Swarer, and Officer Walls knew or should have known that Greenbrier and its agents should not release B.C.M.E. to Elam and Satterley. Elam and Satterley were not on Greenbrier's official list of people authorized to remove B.C.M.E. from Greenbrier. Captain Spencer, Sergeant Swarer, and Officer Walls did not request or require Elam and Satterley to document or otherwise support their alleged right to take custody of B.C.M.E. and to remove

B.C.M.E. from Greenbrier. Elam presented an alleged birth certificate that bears his name as "father," but Greenbrier, Stephens, Prather, Captain Spencer, Sergeant Swarer, and Officer Walls had no way of knowing whether the birth certificate was authentic, and Elam did not present a court order evidencing any custodial rights he might have. The Defendants knew or should have known that a birth certificate alone is insufficient evidence of custodial rights to B.C.M.E.

23. On February 21, 2022, President's Day (a day when the Rogers County courthouse was closed), Captain Spencer told Greenbrier's agents, Stephens and Prather, that Judge Pazzo told him the Catoosa Police Department had no jurisdiction in this matter, and neither the Police nor Greenbrier or its agents could prevent Elam from taking B.C.M.E.

24. After receiving this information from Captain Spencer, Greenbrier, through its agents, removed B.C.M.E. from his classroom and brought him to the lobby, where he was turned over to Elam and Satterley in the presence of Captain Spencer, Sergeant Swarer, and Officer Walls.

25. After Elam and Satterley had physical control over B.C.M.E., Captain Spencer instructed Elam, Satterley, Sergeant Swarer, and Officer Walls to leave the Greenbrier premises before Katelynne arrived.

26. After learning about the incident from Greenbrier, Katelynne immediately went to Greenbrier to learn more details about what had happened to her son. Katelynne then contacted Catoosa P.D. to file a report, but was told she could not do

so. Katelynne tried to file a report with the Rogers County Sheriff's Department, again to no avail.

27.     Katelynne and her significant other traveled to Kentucky and contacted the Rockcastle County, Kentucky, County Attorney, the county where Elam lived. This marked the beginning of the involvement of law enforcement officers and judicial agencies across multiple states.

28.     Katelynne hired Parsons, Graham, & Day, LLC, to file a Paternity action in Rogers County (FP-2022-6), seeking Emergency Custody and a Writ of Habeas Corpus. Judge David Smith of the District Court in and for Rogers County, State of Oklahoma, granted and issued the same on February 25, 2022.

29.     Katelynne hired an attorney in Kentucky who domesticated the orders from the Rogers County, OK Case No.: FP-2022-6.

30.     The Kentucky court issued a Pickup Order.

31.     Elam moved B.C.M.E. between several counties in Kentucky, seeking to avoid law enforcement and the Pickup Order.

32.     After Katelynne contacted three or four law enforcement agencies in Kentucky to enforce the Pickup Order, the Kentucky State Police recovered B.C.M.E. on February 28, 2022, seven days after Elam and Satterley, assisted by Captain Spencer, Sergeant Swarer, and Officer Walls, unlawfully took B.C.M.E. from Greenbrier.

33.     The Kentucky authorities arrested Elam in Anderson County, Kentucky, and charged him with Custodial Interference, violating Kentucky Statute § 509.070, along with a traffic violation. Elam eventually entered a plea deal as to these charges.

## FIRST CAUSE OF ACTION
## VIOLATION OF CONSTITUTIONAL RIGHTS
## UNDER THE FOURTH AND FOURTEENTH AMENDMENTS
## [42 U.S.C. § 1983]

34. The allegations outlined in Paragraphs 1 through 33 above are incorporated herein as if fully set forth.

35. Captain Spencer, Sergeant Swarer, and Officer Walls were acting under the color of state law and as employees of the City of Catoosa when they violated and deprived Katelynne of her constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be secure in her person and liberty and to be free from unlawful interference with her custodial and companionship rights to her minor child, B.C.M.E. Captain Spencer, Sergeant Swarer, and Officer Walls ("police officers") used their power and authority as police officers to interfere with and deprive Katelynne of her custodial and companionship rights to B.C.M.E.

36. Captain Spencer, Sergeant Swarer, and Officer Walls were acting under color of law and violated Katelynne's Fourth and Fourteenth Amendment liberty interests when they aided and abetted Elam and Satterley in removing B.C.M.E. from Greenbrier, thereby unlawfully interfering with Katelynne's legal rights as the sole custodial parent for B.C.M.E. Captain Spencer, Sergeant Swarer, and Officer Walls violated Katelynne's constitutional rights under the Fourth and Fourteenth Amendments to be secure in her person and to enjoy her constitutional rights to custody and companionship of B.C.M.E. when they assisted and took part in the wrongful removal of B.C.M.E. from Greenbrier, thus denying Katelynne's rights to custody under 10 O.S. § 7800 and 43 O.S. § 111.2. B.C.M.E. was four-years-old at the

time of the incident, well below the age of eighteen, and entitled to protection under 43 O.S. § 111.2.

37. Captain Spencer, Sergeant Swarer, and Officer Walls had no legitimate state interest when, under color of law, they interfered with the parent-child relationship between Katelynne and B.C.M.E. and Katelynne's Fourth and Fourteenth Amendment liberty rights to be secure in her person and to enjoy her constitutional rights to custody and companionship of B.C.M.E.

38. Because Captain Spencer, Sergeant Swarer, and Officer Walls acted under color of law when they interfered with Katelynne's right to be secure in her person and free from unlawful interference with her custodial and companionship rights to her minor child and deprived Katelynne of her constitutional rights to be secure in her person and to enjoy her constitutional rights to custody and companionship of B.C.M.E., they are liable, under 42 U.S.C. § 1983, for the damages resulting from their actions.

### SECOND CAUSE OF ACTION
### VIOLATION OF CONSTITUTIONAL RIGHTS
### UNDER THE FOURTH AND FOURTEENTH AMENDMENTS
### [42 U.S.C. § 1983]

39. The allegations outlined in Paragraphs 1 through 38 above are incorporated herein as if fully set forth.

40. Captain Spencer, Sergeant Swarer, and Officer Walls, acting under color of law and as employees of the City of Catoosa, acted with deliberate indifference to the Fourth and Fourteenth Amendment liberty interests of B.C.M.E. when they fraudulently and maliciously aided and abetted Elam and Satterley's wrongful

removal of B.C.M.E. from Greenbrier and unlawful placement of B.C.M.E. under the control of Elam and Satterley. Captain Spencer, Sergeant Swarer, and Officer Walls violated B.C.M.E.'s Fourth and Fourteenth Amendment liberty rights to companionship and society with his mother, Katelynne, when they assisted Elam and Satterley in child stealing in violation of 21 O.S. § 891. B.C.M.E. was four-years-old at the time of the incident, well below the age of sixteen, and well within the scope of protection mandated by 21 O.S. § 891.

41.  Captain Spencer, Sergeant Swarer, and Officer Walls had no legitimate state interest when, under color of law, they interfered with B.C.M.E.'s Fourth and Fourteenth Amendment liberty rights to companionship and society with his mother, Katelynne.

42.  Because Captain Spencer, Sergeant Swarer, and Officer Walls were acting under color of law when they deprived B.C.M.E. of his constitutional rights to companionship and society with his mother, Katelynne, they are liable, under 42 U.S.C. § 1983, for the damages resulting from their actions.

## PRAYER

**WHEREFORE**, the McClures pray that upon trial, this Court grant them judgment against the Defendants, jointly and severally, for compensatory damages in an amount in excess of $100,000, exclusive of interest, costs, and attorneys' fees; award the McClures punitive damages in an amount in excess of $100,000, against Captain Doug Spencer, individually; Sergeant Jennifer Swarer, individually; and Officer Doug Walls, individually; award the McClures their reasonable attorney's fees and costs, pre and post-judgment interest; and grant the McClures such further relief as the Court deems just and equitable.

Respectfully submitted,

/s/ Isaiah Parsons

Isaiah Parsons, OBA #31181
Charles Graham, OBA #17286
Matthew Day, OBA #31033
PARSONS, GRAHAM & DAY, LLC
525 South Main Street, Suite 300
Tulsa, Oklahoma 74103
Telephone: (918) 307-1529
Facsimile: (918) 514-8093
E-Mail: pgdokc@gmail.com
Attorneys for Plaintiffs

and

/s/ Lawrence W. Zeringue

Lawrence W. Zeringue, OBA #9996
LAWRENCE W. ZERINGUE, P.C.
525 South Main Street, Suite 312
Tulsa, Oklahoma 74103
Telephone: (918) 574-8488
Email: larry@lwzeringuepc.com
Attorney for Plaintiffs