IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) KATELYNNE McCLURE, AND ON BEHALF OF; | ) ) | |
| (2) B.C.M.E., a MINOR CHILD, | ) ) | |
| Plaintiffs, | ) ) | Case No. 25-CV-373-MTS |
| vs. | ) ) ) | |
| (1) DOUG SPENCER, Individually as Captain of the Police Department of City of Catoosa, Oklahoma; | ) ) ) ) | |
| (2) JENNIFER SWARER, Individually as Sergeant of the Police Department of City of Catoosa, Oklahoma; AND | ) ) ) ) | |
| (3) DOUG WALLS, Individually as an Officer of the Police Department of City of Catoosa, Oklahoma, | ) ) ) ) | |
| Defendant. | ) | |

**SPECIAL APPEARANCE OF DEFENDANTS DOUG SPENCER AND
DOUG WALLS AND MOTION TO STAY ALL PROCEEDINGS
AND TAX COSTS PER F.R.C.P. 41(d) AND BRIEF IN SUPPORT**

COME NOW Defendants Doug Spencer and Doug Walls, appearing specially herein, and pursuant to F.R.C.P. 41(d), hereby file this Motion to Stay All Proceedings and Tax Costs per F.R.C.P. 41(d) and Brief in Support.[1]  Defendants would state more fully as follows:

**I.    BACKGROUND**

    **a.    Brief Summary of Facts and Allegations**

The present action is the <u>fourth</u> lawsuit arising out events that occurred on February 21, 2022 – over three (3) years ago.  On that date, several officers with the Catoosa Police Department

---

[1] By appearing specially and requesting a stay of proceedings per F.R.C.P. 41(d), Defendants do not intend to waive their right to file an appropriate answer, affirmative defenses, and/or a Motion under F.R.C.P. 12.

were alerted to a potential domestic matter arising out of the Greenbrier Learning Center ("Greenbrier"). Police dispatch advised that one Timothy Elam ("Elam") was trying to "pick up" B.C.M.E., a minor, from the Greenbrier facility. Elam had presented Greenbrier employees with his I.D., and a birth certificate establishing that he was the biological father of B.C.M.E. Elam also (accurately) informed them that no custody order was in place regarding B.C.M.E. Greenbrier employees were unsure on what to do, considering a biological father was requesting authority to take custody of his own son – and had provided proof of his parental status. Plaintiff Katelynn McClure ("McClure"), the biological mother of B.C.M.E., was not present at the Greenbrier facility at the time.

Unbeknownst to these moving Defendants, McClure had recently left Kentucky and moved to Oklahoma with B.C.M.E. and had started living with another man. Elam and his family members all reside in Kentucky. After the move, McClure prevented Elam's family members (with whom B.C.M.E. had formed a strong bond) from making further contact with B.C.M.E., and had limited Elam's ability to communicate with B.C.M.E. Elam, of course, claimed that he was not aware that McClure was taking B.C.M.E. to Oklahoma. This dispute apparently formed part of the reason Elam drove to Oklahoma and attempted to take custody of his son on February 21, 2022.

On his way to the Greenbriar facility, Captain Douglas Spencer (with the Catoosa Police Department) called District Judge Stephen Pazzo to consult about the situation. Judge Pazzo informed Captain Spencer that, in the absence of a custody order, the Catoosa Police Department did not have the authority to prevent the biological father from obtaining custody of B.C.M.E. Armed with this judicial directive, Captain Spencer then proceeded to the Greenbrier facility along with Sergeant Swarer and Officer Walls. When they arrived, Spencer did not direct Greenbrier

employees to release B.C.M.E. to Elam; rather, he simply stated that he had contacted a local judge who informed him that he did not have authority to prevent Greenbrier from releasing B.C.M.E. to Elam. Captain Spencer confirmed that Greenbrier had not received any complaints of abuse concerning Elam. Thereafter, Greenbrier elected to release B.C.M.E. to Elam, and Elam took B.C.M.E. with him to Kentucky. <u>At no point in time did Spencer, Swarer, or Walls have custody of B.C.M.E., and at no point in time did Spencer, Swarer, or Walls direct any person to take custody of B.C.M.E.</u>

Not surprisingly, disputes arose thereafter between McClure and Elam concerning custody of B.C.M.E. To briefly summarize, McClure drove to Kentucky; consulted with attorneys; filed a custody/paternity proceeding in Oklahoma[2]; and, by February 26, 2022, i.e., within six (6) days, had re-gained custody of B.C.M.E. She returned to Oklahoma where she now resides with B.C.M.E. (and, at one point, with her new boyfriend).

### b.    **Plaintiffs' Four Lawsuits**

Excluding the underlying state court child custody/paternity proceedings, Plaintiffs have now filed four (4) lawsuits arising out of these events, including the present lawsuit ("*McClure IV*") and the following three (3) lawsuits:

- *Katelynne McClure and B.C.M.E., v. Greenbrier Learning Center II, Ltd; Camella Prather; Shawna Stephens; Jessica Satterly; Timtohy Elam*, Case No. CJ-2022-217, District Court in and for Rogers County (filed 6.7.22) (*"McClure I"*).

- *Katelynne McClure and B.C.M.E., v. City of Catoosa; Chief Ronald Benight; Doug Spencer, Jennifer Swarer, and Doug Walls*, Case No. CJ-2023-318, District Court in and for Rogers County (filed 9.15.23) ("*McClure II*").

---

[2] *See In the Matter of Katelynne McClure v. Timothy Elam*, FP-2022-6. This custody/paternity proceeding is ongoing. Both parties to that dispute seek custody of B.C.M.E.

3

- *Katelynne McClure and B.C.M.E., v. City of Catoosa; Chief Ronald Benight; Doug Spencer; Jennifer Swarer; and Doug Walls*, Case No. 4:24-cv-0089-JFJ, District Court for the Northern District of Oklahoma (filed 2.20.24) ("*McClure III*").

In *McClure I*, Plaintiffs sued Greenbrier and two employees of Greenbriar (Carmela Prather and Shawna Stephens). She also sued Elam and Jessica Satterly (cousin of Elam who was present with Elam on February 21, 2022). She attempted to state civil claims for: (1) "Child Stealing" [Elam and Satterly]; (2) "Conspiracy to Commit Child Stealing" [all Defendants]; (3) Negligence *per se* [21 O.S. §891] [all Defendants]; (4) "Violating a Custody Statute" [Stephens, Prather, Elam and Satterly]; and (5) Intentional Infliction of Emotional Distress [all Defendants]. *McClure I* is still ongoing; certain parties in that case have filed motions for summary judgment and have recently requested an extension of the scheduling order.

In *McClure II*, Plaintiffs sued City of Catoosa; Ronald Beneight (official capacity only, as Chief of Police of City of Catoosa); Doug Spencer (individually and in official capacity); Jennifer Swarer (individually and in official capacity); and Doug Walls (individually and in official capacity). She attempted to state civil claims for (1) "Child Stealing" [Spencer, Swarer, and Walls]; (2) "Conspiracy to Commit Child Stealing" [Spencer, Swarer, and Walls]; (3) "Denial of Right to Custody" [Spencer, Swarer, and Walls]; (4) "Wrongs Against Personal Relations" [Spencer, Swarer, and Walls]; (5) "Violating a Custody Statute" [Spencer, Swarer, Walls]; (6) Negligence per se [10 O.S. §7800] [Spencer, Swarer, and Walls]; (7) Negligent Supervision [City of Catoosa and Chief Benight]; (8) Intentional Infliction of Emotional Distress [all Defendants]; and (9) "Punitive damages" [all Defendants]. (Ex. 1, Petition).

The parties conducted discovery in that matter and Defendants thereafter filed well-supported Motions for Summary Judgment. (Ex. 2; Ex. 3) (without exhibits). Defendants' official capacity Motion for Summary Judgment sought sanctions against Plaintiffs and Plaintiffs' counsel

4

based on certain frivolous factual and legal assertions. (Ex. 2 at 15-16). Instead of responding to Defendants' Motions for Summary Judgment, Plaintiffs' counsel voluntarily filed a dismissal "without prejudice" on April 3, 2025. (Ex. 4).

In *McClure III*, Plaintiffs pursued claims against City of Catoosa, Ronald Benight, Doug Spencer, Jennifer Swarer, and Doug Walls. Plaintiffs pursued the following claims: (1) Plaintiff Katelynne McClure – 14th Amendment Claim (interference and deprivation of "custodial and companionship rights"); (2) Plaintiff B.C.M.E. – 14th Amendment Claim (a right to "be free from unlawful interference with his custodial and companionship rights to his mother"). Plaintiffs claimed that they were also asserting "causes of action arising under Oklahoma law, namely claims for child stealing and conspiracy to commit child stealing. (Ex. 5, ¶4). On October 24, 2024, Magistrate Jayne ordered Plaintiffs to show cause why that case should not be dismissed due to Plaintiffs' failure to serve the Defendants as required by F.R.C.P. 4(m). Plaintiffs' counsel failed to respond to the Court's Order in any regard. Hence, on November 12, 2024, the Court issued an Order dismissing the matter without prejudice. (Ex. 6).

Plaintiffs have now filed *McClure IV*, and assert claims against Doug Spencer, Jennifer Swarer, and Doug Walls in their individual capacities only. (Doc. 5). They assert claims for: (1) Plaintiff Katelynne McClure – 4th and 14th Amendments (right to be "secure in her person" and right to "be free from unlawful interference with her custodial and companionship rights to her minor child"); and (2) Plaintiff B.C.M.E. – 4th and 14th Amendments ("deliberate indifference" to "liberty interests" when Defendants allegedly "fraudulently and maliciously aided and abetted Elam and Satterly's wrongful removal of B.C.M.E. from Greenbriar" and "assisted Elam and Satterly in child stealing").

    c.    **Defendant Swarer**

Plaintiffs' counsel's conduct with respect to Defendant Swarer has been nothing short of bizarre. On January 16, 2025, the undersigned counsel of record filed a Suggestion of Death Upon the Record in the state court proceedings, noting that Ms. Swarer had passed away during the pendency of the proceedings. (Ex. 7). Defendants referenced this issue again in their underlying Motions for Summary Judgment. (Ex. 3 at 4 n.1). But, despite Plaintiffs' counsel's subjective knowledge of her death, they have attempted to assert claims against her in this lawsuit. In addition, they have instructed a process server to attempt to serve her in-person, and the process server has apparently been knocking on someone's door, and listening to what is going on in the residence. (Doc. 9 at 2) ("[D]espite ringing the doorbell and hearing people talking and the television playing within the residence, the attempt was unsuccessful."). Hence, it seems clear that Plaintiffs' counsel are not taking this litigation seriously, but are instead filing serial lawsuits, making frivolous factual and legal assertions, and hoping something will stick.

## II.   ARGUMENTS AND AUTHORITIES

**THE COURT SHOULD STAY ALL PROCEEDINGS
UNTIL PLAINTIFFS PAY COSTS AND FEES
INCURRED IN THE UNDERLYING LITIGATION**

As discussed below, Defendants seek a stay of all proceedings and an order that Plaintiffs pay reasonable costs and fees incurred by Defendants in the previous action which was voluntarily dismissed by Plaintiffs.

### 1.   Rule 41(d) and Relevant Legal Standards

According to Rule 41(d):

> (d) *Costs of a Previously Dismissed Action.* If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:
>
> > (1) may order the plaintiff to pay all or part of the costs of that previous action; and

    (2) may stay the proceedings until the plaintiff has complied.

  Rule 41(d) gives the Court substantial discretion to award costs and fees to the defendant when an action has previously been voluntarily dismissed and is then re-filed. That is, "[c]osts may be imposed under Rule 41(d) where the plaintiff has brought a second identical, or nearly identical, claim and has requested identical, or nearly identical, relief." *Esquivel v. Arau*, 913 F. Supp. 1382, 1387 (C.D. Cal. 1996). Courts have noted that the purpose of Rule 41(d) is "to serve as a deterrent to forum shopping and vexatious litigation." *Simeone v. First Bank Nat'l Ass'n*, 971 F.2d 103, 108 (8th Cir. 1992); *see also Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000) (citing *Simeone*, 971 F.2d at 108); Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2375 (3d ed.) (citing cases). This includes attempts to "gain any tactical advantage by dismissing and refiling th[e] suit." *Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir. 2000) (citation omitted) (alteration in original); *Andrews v. Am.'s Living Centers, LLC*, 827 F.3d 306, 309 (4th Cir. 2016).

  Rule 41(d) does not require a showing of bad faith on the part of the plaintiff in dismissing the previous lawsuit. *E.g., Rogers,* 230 F.3d at 874 ("Rogers' claim of pure motive does not win the day because 'nothing in the language of Rule 41(d) ... suggests that a defendant must show 'bad faith' before a district court can order payment of costs incurred in a voluntarily dismissed previous action.'"). As noted by the *Esquivel* Court:

> Nothing in the language of Rule 41(d) or the case law suggests that a defendant must show "bad faith" before a district court can order payment by a plaintiff of costs incurred in a voluntarily-dismissed previous action. Instead, the court should simply assess whether a plaintiff's conduct satisfies the requirements of Rule 41(d), and whether the circumstances of the case warrant an award of costs to prevent prejudice to the defendant. Here, Esquivel has failed to present a persuasive explanation for the course of litigation described above, and it is clear that defendants have incurred needless expenditures as a result. Thus, an award under Rule 41(d) is appropriate.

*Esquivel*, 913 F. Supp. at 1388.

Hence, to establish an entitlement to costs and fees, a defendant must demonstrate: (1) the plaintiff previously dismissed a prior lawsuit, (2) the plaintiff commenced a second suit based upon or including the same claim(s) against defendant, and (3) the defendant incurred costs and attorneys' fees in the previous action that are not useful in the second-filed lawsuit. *See Lyons v. Dish Network L.L.C.*, 2013 WL 5637992, at *1 (D. Colo. 2013) (citing *Warnick v. Dish Network LLC*, 12-cv-01952-WYD-MEH, 2013 WL 1151884, at *6 (D. Colo. Mar. 19, 2013)); *Kulikowski v. Polis*, 2021 WL 4226141, at *3 (D. Colo. Jan. 21, 2021).

Further, under Tenth Circuit law, Defendants are also entitled to a reasonable award of attorney fees under Rule 41(d). *Meredith v. Stovall*, 216 F.3d 1087 (10th Cir. 2000) (unpublished) ("Under the language of Rule 41(d), the decision whether to impose costs and attorney's fees is within the discretion of the trial court) (citing 8 James Wm. Moore at el ., Moore's Federal Practice § 41-70[1] (citing cases holding that award of costs is discretionary), § 41-70[6] (citing cases holding that attorney's fees are available under Rule 41(d)) (3d ed.1997)); *Oteng v. Golden Star Res., Ltd.*, 615 F. Supp. 2d 1228, 1240 (D. Colo. 2009) (citing *Meredith* and noting that "the majority of courts find that attorneys' fees are available under Rule 41(d)").

2.     **Defendants are Entitled to Fees and Costs and a Stay of Proceedings.**

Pursuant to the above-referenced standards, an award of costs and fees is appropriate to these moving Defendants under Rule 41(d), along with a stay of all proceedings until said costs and fees are paid:

**(a) Plaintiffs Previously Dismissed a Prior Lawsuit**

Plaintiffs previously voluntarily dismissed *McClure II* without prejudice after facing well-supported motions for summary judgment and a request for sanctions. Likewise, *McClure III* was

8

dismissed by the Court after Plaintiffs' counsel failed to respond to a show cause order related to service of process.

### (b) Plaintiffs commenced a second suit based upon or including the same or substantial similar claims against Defendants

Plaintiffs thereafter filed *McClure IV*, which contains the same or substantially similar claims against three of the same Defendants. Plaintiffs have pursued federal claims in *McClure IV* which are identical to the claims asserted in *McClure III*. In addition, the federal claims in *McClure IV* are substantially identical to the state law claims in *McClure II.* In Oklahoma, "[o]nly a single cause of action can be predicated on the same set of facts, but different theories of liability may be pressed in support of each claim alleged." *Hadnot v. Shaw*, 1992 OK 21, ¶ 24, 826 P.2d 978, 987. Here, Plaintiffs' "claims" all arise out of the same transaction or occurrence and are therefore the "same" for purposes of Rule 41(d). That is, they are all based on events that occurred on February 21, 2022, and based primarily on the allegation that Defendants "interfered" with Plaintiff McClure's custodial rights to B.C.M.E.

### (c) Defendants incurred costs and attorneys' fees in the previous action that are not useful in the second-filed lawsuit

As a result of the dismissal, Defendants incurred filing fees, copying costs, and deposition costs related to the underlying lawsuit that are not "useful" in the present lawsuit. (Ex. 8, Affidavit of T. Le Blanc). For instance, Defendants took the deposition of Plaintiff, but her deposition will need to be re-taken in this lawsuit. In addition, Defendant incurred filing fee for the underlying Motion for Summary Judgment – a fee that is useless in the present case. In addition, Defendants expended time in drafting their Motion for Summary Judgment – time that will be useless in this federal case, considering new motions will be required in this case; federal standards are different from state law standards; and the evidence and arguments related to Plaintiffs' claims in this case

may be different.  *See also Loubier v. Modern Acoustics, Inc.*, 178 F.R.D. 17, 19 (D. Conn. 1998) (fees and costs awarded under the rule where the plaintiffs filed a motion to dismiss in a prior suit for lack of subject matter jurisdiction after which the plaintiffs voluntarily dismissed the case).

In fact, it appears Plaintiffs dismissed the state court action to avoid responding to Defendants' pending Motions for Summary Judgment and *so that* Plaintiffs could re-tool their federal claims.  Indeed, the dismissal of *McClure II* was filed at the most opportune time possible, i.e., *after* the conclusion of discovery and *after* Defendants filed lengthy and well-supported Motions for Summary Judgment.  Plaintiffs' counsel were able to view all of Defendants' legal arguments and supporting evidence and, hence, were on notice that their state law claims lacked merit.  And so, realizing this fact, they pivoted and decided to dismiss their case and reformulate their claims in this Court, where they will attempt to start discovery afresh.

For those reasons, an award of attorney fees for drafting the Motion for Summary Judgment in the underlying case is particularly appropriate considering the background of this matter, and the fact that Plaintiffs have essentially attempted to have <u>four bites at the apple</u>.  *See Loubier*, 178 F.R.D. at 23 ("Plaintiffs have had more than 'one bite at the apple.'  There has been one mistake after another in the pleadings, all of which have been at a cost to the defendants.").  The procedural background reeks of forum shopping.  At a minimum, it exemplifies vexatious litigation conduct.  *Cory v. Ovintiv USA Inc.*, 2023 WL 2991662, at *3 (W.D. Okla. Mar. 31, 2023)  ("Plaintiff's acts of voluntarily dismissing the Original Action in state court and refiling the same causes of action against the same defendant in federal court approximately three months later reflect, by themselves, an attempt to circumvent the remand to state court and to begin the action anew.")*;  Rogers*, 230 F.3d at 874 ("Rule 41(d) is also intended to prevent attempts to 'gain any tactical advantage by dismissing and refiling th[e] suit.'"); *Esquivel v. Arau*, 913 F. Supp. 1382, 1387

(C.D. Cal. 1996) ("Costs may be imposed under Rule 41(d) where the plaintiff has brought a second identical, or nearly identical, claim and has requested identical, or nearly identical, relief.").

### (d) Amount Requested

Based on these arguments, Defendants request an award of costs of $1,424.85 for copying costs, the filing fee for the underlying motion for summary judgment, and for the transcription cost for the deposition of Plaintiff. (Ex. 8, Affidavit, ¶¶9-11). In addition, Defendants seek an award of fees in the amount of $2,700.00 for drafting the underlying Motion for Summary Judgment. Defendants contend that the hours expended and the rates charged are reasonable under the circumstances. (Ex. 8, ¶¶12-13; *Robinson v. eCollect Solutions, LLC*, 2022 WL 218635 (D. Kan. 2022) (recognizing reasonable hourly rates of $300/$400)).

### III.   CONCLUSION

As discussed above, the present lawsuit is the *fourth* lawsuit arising out of events that occurred on February 21, 2022. The parties substantially litigated this matter in state court, and upon the conclusion of discovery, Defendants filed well-supported Motions for Summary Judgment. Instead of responding, Plaintiffs' counsel filed – without explanation – a voluntary dismissal without prejudice. They then re-filed the case in this Court, essentially seeking a do-over. They have even asserted claims against a Defendant that they know is deceased and have instructed a process server to undertake efforts to serve her.

For all these reasons, Defendants file the present Motion pursuant to F.R.C.P. 41(d) and request an award of fees and costs as outlined above, and a stay of all proceedings until such costs and fees are paid.

WHEREFORE, premises considered, Defendants Doug Spencer and Doug Walls request the Court enter the following relief:

(1)  Award Defendants costs in the amount of $1,424.85;

(2)  Award Defendants attorney fees in the amount of $2,700.00;

(3)  Stay all proceedings until such costs and fees are paid; and

(4)  Award other appropriate relief.

Respectfully submitted,

BEST & SHARP

*s/ Thomas A. LeBlanc*
Thomas A. LeBlanc, OBA #14768
Andrew C. Garrison, OBA #35614
15 E. 5th Street, Suite 2100
Tulsa OK 74103
Telephone: (918) 582-1234
Facsimile: (918) 585-9447
tleblanc@bestsharp.com
agarrison@bestsharp.com
*Attorneys for Defendants,*
*Doug Spencer, Individually as Captain*
*of the Police Department of City of Catoosa,*
*Oklahoma; and Doug Walls, Individually as*
*an Officer of the Police Department of City*
*of Catoosa, Oklahoma*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 6th day of November, 2025, I mailed a true and correct copy of the above and foregoing instrument, via United States Mail, postage prepaid, to:

| | |
|---|---|
| Isaiah Parsons, OBA #31181<br>Charles Graham, OBA 17286<br>Matthew Day, OBA #31033<br>Parsons, Graham & Day, LLC<br>525 South Main Street, Suite 300<br>Tulsa, OK  74103<br>Telephone:  (918) 307-1529<br>Facsimile:  (918) 514-8093<br>Email:  pgdokc@gmail.com<br><br>*Attorney for Plaintiffs* | Lawrence W. Zeringue, OBA #9996<br>Lawrence W. Zeringue, P.C.<br>525 South Main Street, Suite 312<br>Tulsa, OK  74103<br>Telephone:  (918) 574-8488<br>Email:  larry@lwzeringuepc.com<br><br>*Attorney for Plaintiffs* |

                                                   *s/ Thomas A. LeBlanc*